DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**J.R.,** a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-2941

[ November 5, 2014 ]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Kathleen J. Kroll, Judge; L.T. Case No. 13CJ001116AMB.

Carey Haughwout, Public Defender, and Jonathan Dodson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

J.R., a child, appeals the trial court's order finding him guilty of possession of marijuana, after denying his motion to suppress. We reverse, because the evidence was obtained as a result of an unlawful stop and detention for truancy.

J.R. was arrested and charged with possession of marijuana, less than twenty grams. He filed a motion to suppress the marijuana that the officer seized from his pocket after frisking him and the statements the officer obtained after taking him into custody. At the hearing on the motion to suppress, a West Palm Beach police officer testified that while patrolling in his vehicle on a school day around 8:15 in the morning, he observed J.R. at 47th Street and Broadway walking away from his bus stop with another juvenile.

The officer knew J.R. because of previous encounters with him. He knew that J.R., a fifteen-year old, attended school and that his bus stop was at 50th Street and Manning, five blocks away. The officer watched

J.R. with his binoculars and saw him walk up to a residence that he knew was not J.R.'s. Because the officer's view was obstructed, he could not see whether J.R. entered the residence, but he saw his companion wait on the street until J.R. joined him a few moments later. The two then continued walking east.

The officer stopped J.R. at 47th and Spruce. J.R., a minor, was holding a package of cigars. The officer asked him "why he had left the bus stop prior to the bus arriving." He testified that J.R. told him that he was walking towards the bus stop, but the officer stated that this was inconsistent with what he observed. The officer explained:

> I initiated the stop based upon what I believe was truancy and I took the cigars from him and I patted him down for my protection. And I saw - - I felt in his pocket what I believed to be a knife, an open - - a closed buck knife. And when I pulled it from his pocket I saw that it was a knife and I had also grabbed with my fingers what I would say is a nickel bag of marijuana or a small half gram bag of marijuana in a zip lock.

The officer took J.R. into custody and placed him in the back of his patrol car. J.R. asked the officer if he was under arrest, whether the officer was taking him home or to the Juvenile Assessment Center, and why he stopped him. The officer explained that he saw him walking up to a house away from the bus stop and he did not know what he was doing. J.R. responded that he bought weed at the house. He added that he and his friend were going to smoke the marijuana instead of going to school.

On cross-examination, the officer testified that J.R.'s bus usually shows up around 8:15 a.m., which was the time he saw J.R. walking away from the bus stop. He acknowledged that he did not know whether the bus came before or after he stopped J.R. because he was busy following J.R. He also acknowledged that there were other bus stops in the area. Although the officer was not sure of the exact time when school started, he conceded that school could have started at 9:30 a.m.

J.R. argued that the evidence and his statements should be suppressed because there was no reasonable basis to stop him for truancy when he was not yet "absent" from school. In addition, he argued that there was no justification for the pat down that led to discovery of the marijuana. The trial court denied J.R.'s motion to suppress. After trial, the court found J.R. guilty of possession of marijuana, less than twenty grams, withheld adjudication of delinquency, and placed him on probation. J.R. appealed.

"The standard of review applicable to a motion to suppress requires an appellate court to defer to the trial court's factual findings but review legal conclusions de novo." *State v. E.W.*, 82 So. 3d 150, 151 (Fla. 4th DCA 2012).

Section 984.13(1)(a), Florida Statutes (2013), states in relevant part:

> (1) A child may be taken into custody:
>
>                                    . . . .
> (b) By a law enforcement officer when the officer has reasonable grounds to believe that *the child is absent* from school without authorization or is suspended or expelled and is not in the presence of his or her parent or legal guardian, for the purpose of delivering the child without unreasonable delay to the appropriate school system site.

(emphasis added).

In this case, the officer initiated a stop of a juvenile for truancy without reasonable grounds to believe that the child was absent from school. Although the officer may have believed that J.R. was planning to miss school based on his observations of J.R.'s movements and location before school started, section 984.13 does not authorize an officer to preemptively detain a child who may be plotting to skip school later. Here, the officer detained the juvenile for truancy well over an hour before school was scheduled to start. J.R. could not have been "absent" from school before it began or was scheduled to begin. Moreover, merely missing the bus could not be considered truancy where, as in this case, the officer did not know whether J.R. had already missed the bus, or whether he could have taken a bus at one of the multiple bus stops in the area or relied on some other means of getting to school that day.

The state relies on *K.A.C. v. State*, 707 So. 2d 1175 (Fla. 3d DCA 1998) to argue that a law enforcement officer may take custody of a child if the officer has reasonable suspicion that the child is simply planning on being truant. However, the state's reliance on *K.A.C.* is misplaced. There, the Third District concluded that police officers had a well-founded suspicion that K.A.C. was truant "when they observed him walking away from the school while all of the other children were walking toward school." *Id.* at 1176-77. Although the state argues an inference can be drawn that school had not yet started because children were walking towards school at the time, the opinion does not specify the time of day when K.A.C. was stopped

3

or reveal whether school was already in session.

Because the officer in this case did not possess the requisite reasonable grounds to believe that J.R. was truant when he stopped and detained him, and did not describe any circumstances or behavior on the part of J.R. to justify the pat down, the trial court should have suppressed the marijuana and incriminating statements resulting from the unlawful search and seizure as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (holding that all evidence obtained from an illegal search and seizure was "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police).

Accordingly, we reverse the denial of the motion to suppress and remand for further proceedings consistent with this opinion.

*Reversed and Remanded.*

WARNER and MAY, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**